# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| JERRY A. BURTON, | ) | 1:09-cv-00354-JLT HC |
|           Petitioner, | ) ) ) | ORDER GRANTING RESPONDENT'S MOTION TO DISMISS PETITION FOR WRIT |
| v. | ) ) | OF HABEAS CORPUS (Doc. 11) |
| ADAMS, Warden, | ) ) | ORDER DISMISSING PETITION FOR WRIT OF HABEAS CORPUS (Doc. 1) |
|           Respondent. | ) ) ) | ORDER GRANTING PETITIONER'S MOTION TO SUPPLEMENT OPPOSITION TO MOTION TO DISMISS (Doc. 15) |
| | ) ) | ORDER DIRECTING CLERK OF COURT TO ENTER JUDGMENT AND CLOSE CASE |

Petitioner is a state prisoner proceeding pro se on a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. On February 26, 2009, Petitioner filed the instant petition. (Doc. 1). On May 27, 2009, the Court ordered Respondent to file a response to the petition. (Doc. 7). On July 27, 2009, Respondent filed the instant motion to dismiss, contending that the Court lacked habeas jurisdiction over the petition since the claims did not challenge the fact or duration of Petitioner's sentence and because Petitioner's claims were not exhausted in state court. (Doc. 11). On August 24, 2009, Petitioner filed his opposition to the motion to dismiss (Doc. 12), and on September 3, 2009, Respondent filed a reply to Petitioner's opposition. (Doc. 13). Subsequently, on February 3, 2009, Petitioner filed a motion to supplement his opposition with a

document indicating that he did not qualify for certain credits based on a recent amendment to California law. (Doc. 15). Respondent objected to Petitioner's motion to supplement his opposition. (Doc. 16). On March 6, 2009, Petitioner filed his written consent to the jurisdiction of the United States Magistrate Judge for all purposes. (Doc. 4). On June 26, 2009, Respondent filed his written consent as well. (Doc. 10).

In his petition, Petitioner, does not challenge his original sentence or conviction. Instead, he raises the following claims: (1) general challenge to 2007 prison "gang validation" determination by Respondent as well as specific challenge to certain evidence used to make that determination; (2) denial of state and federal liberty interests by violating agreement not to use certain types of evidence in the gang validation process; (3) Respondent's refusal to follow established procedures and regulations regarding the process of gang validation; and (4) illegal confinement in administrative segregation for being a gang member. (Doc. 1, pp. 4-5; 6-12).

**DISCUSSION**

A. Procedural Grounds for Motion to Dismiss

As mentioned, Respondent has filed a motion to dismiss the petition for lack of habeas jurisdiction and because Petitioner's claims have not been exhausted in state court. Rule 4 of the Rules Governing Section 2254 Cases allows a district court to dismiss a petition if it "plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court . . . ." Rule 4 of the Rules Governing Section 2254 Cases.

The Ninth Circuit has allowed Respondent's to file a motion to dismiss in lieu of an answer if the motion attacks the pleadings for failing to exhaust state remedies or being in violation of the state's procedural rules. See, e.g., O'Bremski v. Maass, 915 F.2d 418, 420 (9th Cir. 1990) (using Rule 4 to evaluate motion to dismiss petition for failure to exhaust state remedies); White v. Lewis, 874 F.2d 599, 602-03 (9th Cir. 1989) (using Rule 4 as procedural grounds to review motion to dismiss for state procedural default); Hillery v. Pulley, 533 F.Supp. 1189, 1194 & n.12 (E.D. Cal. 1982) (same). Thus, a Respondent can file a motion to dismiss after the court orders a response, and the Court should use Rule 4 standards to review the motion. See Hillery, 533 F. Supp. at 1194 & n. 12.

2

In this case, Respondent's motion to dismiss is based on a lack of habeas jurisdiction and a failure to exhaust state remedies. Because Respondent's motion to dismiss is similar in procedural standing to a motion to dismiss for failure to exhaust state remedies or for state procedural default and Respondent has not yet filed a formal answer, the Court will review Respondent's motion to dismiss pursuant to its authority under Rule 4.

B. <u>Lack of Habeas Jurisdiction</u>.

1. <u>Petitioner's Motion to Supplement</u>.

In this case, Petitioner contends that Respondent violated Petitioner's constitutional rights by making an adverse "gang validation" that resulted in Petitioner's confinement in the Secure Housing Unit ("SHU"). Petitioner does not challenge either the underlying conviction or his sentence. Respondent's motion to dismiss is based in part upon the petition's failure to allege claims that, if granted, would affect the fact or duration of Petitioner's incarceration. Respondent correctly notes that habeas jurisdiction is absent where the Court cannot provide a remedy that would affect the length of a petitioner's sentence.

In response, Petitioner has filed a motion to supplement his opposition to the motion to dismiss. In his motion to supplement, Petitioner proffers a copy of an "Executive Summary," evidently prepared by the California Department of Correction and Rehabilitation ("CDCR"), regarding recently enacted amendments to California Penal Code § 2933, which purports to augment the credit-earning capacity of certain classes of inmates. The Executive Summary indicates that it does not apply to inmates who have been "gang validated" or who are incarcerated in the SHU. Respondent has replied to the motion to supplement, contending that (1) construed as a motion to amend or supplement the petition, it should be denied as untimely, and (2) construed as a motion to supplement Petitioner's opposition to the motion to dismiss, it does not establish that the Court has habeas jurisdiction over the petition.

Thus, before the Court can address the merits of the issues raised in the motion to dismiss, the Court must first consider Petitioner's motion to supplement his opposition.

A plaintiff may amend a complaint "as a matter of course," and without leave of Court, before a response has been filed under Federal Rule of Civil Procedure 15(a). Leave of Court is

required for all other amendments. Rule Civ. P. 15(a). While the Court should freely give leave to amend if justice requires, the Court may deny leave to amend if the amendment would be futile or subject to dismissal. Bonn, 59 F.3d at 845; Saul v. United States, 928 F.2d 829, 843 (9th Cir. 1991).

Leave to amend pleadings is freely given unless the opposing party makes a showing of prejudice. Foman v. Davis, 371 U.S. 178, 182 (1962). Although delay, combined with factors such as bad faith, dilatory motive, or futility of amendment may constitute grounds for denying leave to amend, mere delay in itself is not. See Morongo Band of Mission Indians v. Rose, 893 F.2d at 1079 (while delay of nearly two years is relevant, it is not enough in itself to support denial of leave to amend). "Where there is lack of prejudice to the opposing party and the amended complaint is obviously not frivolous or made as a dilatory maneuver in bad faith, it is an abuse of discretion to deny such a motion." Hurn v. Retirement Fund Trust of Plumbing, Heating & Piping Industry of So. Calif., 648 F.2d 1252, 1254 (9th Cir. 1981).

Here, Petitioner filed his motion to supplemental after Respondent had filed the motion to dismiss. Accordingly, leave of Court is required for this amendment to the petition. In considering how to construe Petitioner's filing, the Court notes that the petition itself is entirely silent on the issue of any potential loss of credits as a result of Petitioner's confinement in the SHU or his gang validation. Likewise, Petitioner did not address the issue in his opposition to the motion to dismiss. It was only after Respondent filed a reply to Petitioner's opposition, once again pointing out that the petition's claims did not allege any impact on the duration of Petitioner's sentence, that Petitioner finally addressed the issue by proffering the Executive Summary and thereby implicitly contending that his gang validation and SHU confinement serve to exclude him from a class of inmates entitled to enhanced credits under a recent amendment to California law.

In the Court's view, Petitioner's motion to supplement does not alter the jurisdictional analysis. As discussed more fully infra, Petitioner is not entitled to credits under § 2933 because he is serving several consecutive, indeterminate life sentences. Therefore, the amendments to § 2933 do not add anything new to the analysis and permitting the amendment would, ultimately,

be futile.  Accordingly, the Court declines to construe the motion to supplement as a motion to amend the petition.  Rather, the Court will construe the motion to supplement as a request to supplement Petitioner's opposition to the motion to dismiss.  As construed, the Court will grant the motion since Respondent has not established any prejudice in granting the motion and Respondent has had a full opportunity to respond to the substance of Petitioner's opposition, as supplemented by Petitioner's motion.

          2. Lack of Habeas Jurisdiction.

A federal court may only grant a petition for writ of habeas corpus if the petitioner can show that "he is in custody in violation of the Constitution . . . ." 28 U.S.C. § 2254(a).  A habeas corpus petition is the correct method for a prisoner to challenge the "legality or duration" of his confinement.  Badea v. Cox, 931 F.2d 573, 574 (9th Cir. 1991), *quoting*, Preiser v. Rodriguez, 411 U.S. 475, 485 (1973); Hill v. McDonough, 547 U.S. 573, 579, 128 S.Ct. 2096 (2006)(challenges to the lawfulness of confinement or to particulars affecting its duration are the province of habeas corpus); Advisory Committee Notes to Rule 1 of the Rules Governing Section 2254 Cases.   In contrast, a civil rights action pursuant to 42 U.S.C. § 1983 is the proper method for a prisoner to challenge the conditions of that confinement.   McCarthy v. Bronson, 500 U.S. 136, 141-42 (1991);  Preiser, 411 U.S. at 499; Badea, 931 F.2d at 574; Advisory Committee Notes to Rule 1 of the Rules Governing Section 2254 Cases.  While the United States Supreme Court has not addressed whether a challenge to a condition of confinement may be brought in habeas corpus, see Docken v. Chase, 393 F.3d 1024, 1028 (9th Cir. 2004), the Ninth Circuit has held that "habeas jurisdiction is absent, and a § 1983 action proper, where a successful challenge to a prison condition will *not necessarily* shorten the prisoner's sentence." Ramirez v. Galaza, 334 F.3d 850, 859 (9th Cir. 2003)(emphasis supplied).

Thus, normally, the Court would consider allegations of SHU confinement or gang validation, without more, to be insufficient to establish habeas jurisdiction since those circumstances relate solely to conditions of confinement, not to the legality or duration of an inmate's confinement.  However, in his motion to supplement, Petitioner has belatedly contended that those conditions of confinement have a discernable and negative effect on his credit-earning

5

ability in prison, thus indirectly affecting the length of his sentence. For the reasons set forth below, the Court rejects Petitioner's argument and concludes that habeas jurisdiction is lacking in this case.

Petitioner was convicted in 1989 in Los Angeles County Superior Court for one count of first degree murder and four counts of attempted murder. (Doc. 16, Ex. 1). Petitioner was sentenced on the murder conviction to an indeterminate term of life with the possibility of parole. (Id.).[1] Petitioner was sentenced to two consecutive, indeterminate life sentences for two of the four attempted murder convictions, and the remaining two attempted murder convictions resulted in indeterminate life terms that were to run concurrent with the other three sentences. (Id.). Petitioner was also sentenced to a determinate term of five years as a result of the "true" finding as to a sentence enhancement for personal use of a firearm, within the meaning of California Penal Code § 12022.55. (Id.).

In In re Dannenberg, 34 Cal.4th 1061 (2005), the California Supreme Court described the evolution of California's differing treatment of inmates sentenced pursuant to the determinate sentencing law ("DSL") and those sentenced under the indeterminate sentencing law ("ISL") as follows:

> For decades before 1977, California employed an "indeterminate" sentencing system for felonies. The court imposed a statutory sentence expressed as a range between a minimum and maximum period of confinement–often life imprisonment–the offender must serve. An inmate's actual period of incarceration within this range was under the exclusive control of the parole authority...During most of this period, parole dates were not set, and prisoners had no idea when their confinement would end, until the moment the parol authority decided they were ready for release.
>
> The DLS, adopted in 1976, largely abandoned this system....
>
> Under the DSL, most felonies are now subject, in the alternative, to three precise terms of years...The court selects one of these alternatives (the lower, middle, or upper term) when imposing sentence...The offender must serve this entire term, less applicable sentence credits, within prison walls, but must then be released for a further period of supervised parole....
>
> However, certain serious offenders, including "noncapital" murderers (i.e., those murderers not punishable by death or life without parole), remain subject to indeterminate

---

[1] In California, persons such as Petitioner who are convicted of first degree murder but who are not sentenced to death or to life without the possibility of parole, must be sentenced to a term of twenty-five years to life with the possibility of parole. Cal. Pen. Code § 190(a).

> sentences. These indeterminate sentencees may serve up to life in prison, but they become eligible for parole consideration after serving minimum terms of confinement....

In re Dannenberg, 34 Cal.4th at 1077-1080 (citations omitted).

Effective January 1, 1983, the California legislature added new § 2933 to the state Penal Code, which eliminated the prior credit-earning system and instituted a new system of "work-time" credits. The new system allowed inmates to earn up to a maximum of one day credit toward their term of incarceration for every day of performance in work assignments or educational programs. 70 Ops. Cal. Atty. Gen. 49 (1987). However, § 2933 applies only to persons sentenced under Penal Code §1170. Persons convicted under § 1170 are those convicted of an offense for which the specified sentence is one of three time periods of imprisonment in state prison. Cal. Pen. Code § 1168. Accordingly, since Petitioner was not sentenced under § 1170, he is not entitled to the normal work-time credits under § 2933 that are awarded to inmates serving determinate sentences.

Instead, Petitioner's credit-earning ability is governed by state regulations. Section 2290(a) of Title 15 provides as follows:

> "Life prisoners may earn post-conviction credit for each year spent in state prison. Post-conviction credit for time served prior to the hearing at which a parole date is established shall be considered at that parole consideration hearing. Thereafter, post-conviction credit for time served since the last hearing shall be considered at progressive hearings. In no case may post-conviction credit advance a release date earlier than the minimum eligible parole date." [2]

The suggested amount of post-conviction credit is "4 months for each year served since the date the life term started." Cal.Code.Regs., tit. 15, 2290(c). The Board of Parole Hearings ("BPH") may grant more or less than four months depending on how much time the inmate's "performance, participation or behavior" warrants. Id. [3] However, this credit does not

---

[2] Title 15 of the Code of California Regulations § 2000(b)(3) defines a "life prisoner" as "a prisoner serving a sentence of life with the possibility of parole." Life sentences may be imposed for, inter alia, first degree murder. Cal. Code Regs., tit. 15, § 2000(b)(3)(A). Here, Petitioner was sentenced to a life term for first degree murder. Accordingly, he falls within the provisions of this regulation vis-a-vis his credit-earning ability.

[3] Although not critical to the Court's analysis, it bears mentioning that the five year sentence imposed for the personal use of a firearm would be subject to § 2933's credit-earning potential because it is a determinate sentence. See Cal. Pen. Code 1170. Under California law, Petitioner would first serve the five-year determinate term before

7

necessarily impact the length of the inmate's term of incarceration.

To fully appreciate the limitations of Petitioner's credit-earning capacity as a life prisoner as it relates to the term of his incarceration, it is necessary to examine how California's parole system for life prisoners interacts with a life prisoner's credit-earning potential. A life prisoner's "Minimum Eligible Parole Date," or "MEPD," is the "earliest date on which an Indeterminate Sentence Law or life prisoner may be legally released on parole." See Cal. Code Regs., titl. 15, § 3000; see also Cal. Code Regs., tit. 15, § 2000(b)(67). The CDCR determines the MEPD. See Cal. Code Regs., tit. 15, § 2400. Conversely, "[t]he length of time a prisoner must serve prior to actual release on parole is determined by the [BPH]." Id.

California law provides that, one year prior to a prisoner's MEPD, a BPH panel shall meet with the prisoner and shall set a release date "unless it determines that the gravity of the current convicted offense or offenses, or the timing and gravity of current or past convicted offense or offenses, is such that consideration of the public safety requires a more lengthy period of incarceration for this individual, and that a parole date, therefore, cannot be fixed at this meeting." Cal. Penal Code § 3041(a). Thus, the prisoner's MEPD is the basis for the timing of the initial suitability hearing.

Following a parole denial, the BPH "shall hear each case annually thereafter," except that the BPH may schedule a subsequent hearing up to five years "after any hearing at which parole is denied" if the prisoner has been convicted of murder and the BPH finds "that it is not reasonable to expect that parole would be granted at a hearing during the following years and states the bases for the finding in writing." Cal. Penal Code § 3041.5(b)(2).

Following a finding of parole suitability for an inmate convicted of a murder committed on or after November 8, 1978, the BPH sets a base term "established solely on the gravity of the base crime, taking into account all of the circumstances of that crime." Cal. Code Regs., tit. 15, § 2403(a). The BPH sets a base term by taking into account the "matrix" of suggested base terms, circumstances in aggravation and mitigation, and adjustments for enhancements or other

---

commencing to serve the first of his three consecutive indeterminate life sentences. Cal. Pen. Code § 669; In re Monigold, 139 Cal.App.3d 485, 488, n. 2 (1983).

8

offenses.  See Cal. Code Regs., tit. 15, § 2403-2411.  However, the BPH may impose a base term other than one provided in the matrix "if justified by the particular facts of the individual case...." Id.  Once a base term is set, the BPH may consider awarding post-conviction credit to reduce the base term, up to four months for each year served, depending on the prisoner's performance, participation, and behavior while in prison.  See Cal. Code Regs., tit. 15, § 2400-2410.

California Penal Code § 190(a) mandates the application of good behavior credits by the CDCR against the minimum term for first degree murder, i.e., twenty-five years, that is imposed by statute for purposes of establishing the MEPD.  In re Dayan, 231 Cal.App.3d 184, 188 (1991). However, nothing in the statute requires the BPH, or CDCR, to reapply those same credits to the actual term it eventually sets for Petitioner's sentence if, and when, it determines that Petitioner is eligible for parole.  Id.; see also Cal. Code Regs., tit. 15, § 2400 ("The [Department of Correction and Rehabilitation's] decisions pursuant to Penal Code §§ 2930 et seq. do not affect the [BPH's] decision concerning post-conviction credit pursuant to these rules.").  Thus, in theory, if a prisoner were determined to be parole eligible at the earliest possible time, credits might be of some use in actually reducing the amount of time a prisoner served before his initial parole suitability hearing was set.  See People v. Rowland, 134 Cal.App.3d 1, 13-14 (1982). However, the question of Petitioner's actual release on parole will be determined only by the BPH, and no matter how much time Petitioner has served, he will not be released until he has been found suitable for parole.  Cal. Pen. Code § 3041(b); Cal.Code Regs., tit. 15, § 2281(a).

Put simply, the credits that Petitioner is statutorily entitled to earn as a life prisoner can have no direct impact upon the amount of time Petitioner must actually serve until the BPH determines that he is suitable for parole and orders his release, if that time ever comes.  The credits can only impact the establishment of the MEPD for purposes of scheduling a parole suitability hearing date.  The questions of precisely when the MEPD will be set for a prisoner like Petitioner who is serving three consecutive life terms, or when the BPH, if ever, will eventually determine that Petitioner is suitable for release on parole, are so remote and speculative at this point as to be nothing more than mere conjecture.  The fact that Petitioner may legally accrue credits that can be used in the calculation of the MEPD has such an attenuated, remote, and

speculative bearing upon the sentence that Petitioner may ultimately have to serve before being released on parole that the Court simply cannot predicate habeas jurisdiction upon it.

As the Ninth Circuit has indicated, "habeas jurisdiction is absent, and a § 1983 action proper, where a successful challenge to a prison condition will not necessarily shorten the prisoner's sentence." Ramirez, 334 F.3d at 858. Here, it is patent that the credits earned by a life prisoner such as Petitioner will not "necessarily shorten" his sentence. Thus, the Court cannot base its habeas jurisdiction upon a credit-earning system that has only a theoretical impact on the duration of Petitioner's sentence.

Petitioner's assertion of recent amendments to § 2933 does not alter this conclusion. First, as discussed above, Petitioner is not entitled to credits earned under § 2933, so any amendments to that statute would not apply to Petitioner. Second, any credits earned on his indeterminate life sentences can only affect the ultimate establishment of a MEPD; they can have no real impact on the actual sentence eventually set for Petitioner or on his eventual release date on parole, should that time ever come.

Accordingly, the Court concludes that it lacks jurisdiction to consider this petition because the claims do not challenge the legality or duration of Petitioner's confinement.

C. Failure To Raise A Federal Question.

As an alternative ground for dismissal, the Court concludes that Petitioner has failed to state a claim for a federal constitutional violation, as required under federal law. The basic scope of habeas corpus is prescribed by statute. Subsection (c) of Section 2241 of Title 28 of the United States Code provides that habeas corpus shall not extend to a prisoner unless he is "in custody in violation of the Constitution." 28 U.S.C. § 2254(a) states that the federal courts shall entertain a petition for writ of habeas corpus only on the ground that the petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." See also, Rule 1 to the Rules Governing Section 2254 Cases in the United States District Court. The Supreme Court has held that "the essence of habeas corpus is an attack by a person in custody upon the legality of that custody . . ." Preiser v. Rodriguez, 411 U.S. 475, 484 (1973).

In order to succeed in a petition pursuant to 28 U.S.C. § 2254, Petitioner must

demonstrate that the adjudication of his claim in state court resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. 28 U.S.C. § 2254(d)(1), (2).

Petitioner does not clearly allege a violation of the Constitution or federal law, nor does he argue that he is in custody in violation of the Constitution or federal law. Petitioner does not allege that the adjudication of his claims in state court "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, . . . or resulted in a decision that was based on an unreasonable determination of the facts . . . ." 28 U.S.C. § 2254. Instead, Petitioner raises only state law claims, and generally, issues of state law are not cognizable on federal habeas review. Estelle v. McGuire, 502 U.S. 62, 67 (1991)("We have stated many times that 'federal habeas corpus relief does not lie for errors of state law.'"), *quoting* Lewis v. Jeffers, 497 U.S. 764, 780 (1990); Gilmore v. Taylor, 508 U.S. 333, 348-349 (1993)(O'Connor, J., concurring)("mere error of state law, one that does not rise to the level of a constitutional violation, may not be corrected on federal habeas"); Middleton v. Cupp, 768 F.2d 805, 814 (9th Cir. 1987)(Habeas corpus is unavailable for alleged errors in the interpretation or application of state law.).

Indeed, federal courts are bound by state court rulings on questions of state law. Oxborrow v. Eikenberry, 877 F.2d 1395, 1399 (9th Cir.), *cert. denied*, 493 U.S. 942 (1989). Further, "the availability of a claim under state law does not of itself establish that a claim was available under the United States Constitution." Sawyer v. Smith, 497 U.S. 227, 239 (1990), *quoting,* Dugger v. Adams, 489 U.S. 401, 409 (1989). Tinsley v. Borg, 895 F.2d 520, 530 (9th Cir.1990), *cert. denied*, 498 U.S. 1091 (1991) ("incorrect" evidentiary rulings are not the basis for federal habeas relief).

Moreover, Rule 4 of the Rules Governing Section 2254 Cases explicitly allows the district court to summarily dismiss a habeas petition when no claim for relief is stated. See O'Bremski v. Maass, 915 F.2d 418, 420 (9th Cir. 1990). Notice pleading is insufficient; the

petitioner must state sufficient facts. See id. (*citing* Blackledge v. Allison, 431 U.S. 63, 75 n. 7(1977).

Ground One of the petition alleges that Respondent used six pieces of evidence, including an address book, two letters, a book entitled "Soledad Brothers," and a gang roster with Petitioner's name on it, to validate Petitioner as a member of the Black Guerilla Family ("BGF") prison gang. (Doc. 1, p. 6). Ground One contends that such evidence was insufficient to constitute "some evidence" for purposes of gang validation, especially in light of the definition of "gang activity" found in the California Code of Regulations. (Id., p. 7). Ground One also contends that Respondent failed to follow a procedure set forth in an agreement between inmates and prison authorities regarding the procedures to be used in gang validations. The only reference in Ground One of the petition to any constitutional right is to the First Amendment right of association. (Id., p. 4). However, Petitioner has provided no explanation or legal theory for how the First Amendment has been violated by his gang validation, nor how the Court's habeas jurisdiction extends to First Amendment violations.

Ground Two contends that Petitioner's state and federal liberty interests "protected by the 14th Amendment were violated when Respondent failed to abide by the "Castillo" agreement. (Doc. 1, p. 8). Petitioner alleges that the Castillo agreement requires Respondent to support a gang validation with "gang related acts" rather than with a simple "laundry list" of evidence. (Id., p. 9). In support of this claim, Petitioner has attached to the petition four pages from what appears to be a settlement agreement in a civil case in federal district court. Petitioner alleges that it is from a case settled in the U. S. District Court for the Northern District of California; however, nothing in the excerpt attached to the petition identifies either the court, the parties, the issues, or, indeed, anything else that this Court would need to know in order to determine what, if any, relationship these four pages have to the allegations in Ground Two.

However, even assuming, arguendo, that the four pages are part of some kind of agreement that is binding on Respondent, the excerpted portion of the settlement agreement, entitled "Policies and Procedures," merely sets forth changes in Title 15 of the California Code of Regulations and in Respondent's own Department Operations Manual ("DOM") that were

mutually agreed to by the parties in the case. The excerpted pages discuss various specific items used to "validate" a gang member and regarding SHU confinement, including, inter alia, confidential sources, "current active determination," hearsay, tattoos and address books. (Doc. 1, pp. 25-26). However, nothing in that portion of the settlement agreement attached to the petition invokes the federal constitution. That is, even assuming this settlement agreement is applicable to Petitioner, it merely sounds in California law since it directs Respondent to make changes in its DOM and the Code of California Regulations regarding SHU confinement. Nowhere do the excerpted pages reference any federal constitutional basis for such changes in procedure.

Ground Three contends that Respondent failed to follow its own procedures in making the gang validation determination. (Doc. 1, p. 9). Specifically, Petitioner argues that Respondent violated Cal. Code Regs., tit. 15, §§ 3312(a)(3), 3315(a), and 3335(d). (Id., p. 10). Petitioner then asserts that a "liberty interest" has arisen based on the fact that Petitioner "is not a BGR," that Petitioner is a "lifer in SHU for three year[ ] so far," that he will receive "instant denial of parole by the board of validated prisoners," and that "retaliatorial [sic] measures by Respondents dislike toward petitioner." (Id., p. 11). Clearly, Ground Three is limited to stating a violation of California state law, not federal constitutional law.

Ground Four contends that Respondents failed to give Petitioner an administrative review by the first working day following SHU placement, as required by 15 C.C.R. § 3337, and that Petitioner's liberty interests have been violated because Respondent failed to follow 15 C.C.R. §§ 3337(a); 3341; 3318(b); and 3338(d),(e),(h), and (i). (Id., p. 12). As with Ground Three, only state law violations are alleged.

From the above discussion, it is clear that none of Petitioner's claims articulates a legal theory for a violation of a federal constitutional right. Rather, Petitioner complains that Respondent has failed to follow California law and regulations, as well as Respondent's own DOM and an unidentified settlement agreement in a civil lawsuit, in making Petitioner's gang validation and SHU placement. Then, without any further explanation, merely alleges that such conduct is a violation of the First Amendment, in Ground One, and of Petitioner's general liberty interest in Grounds Two, Three and Four. Such vague allegations, however, are grossly

insufficient to state a federal habeas claim. A petitioner's broad assertion of a constitutional violation does not transform a state claim into a federal one. Merely placing a "due process" label on an alleged violation does not entitled Petitioner to federal relief. Langford v. Day, 110 F.3d 1386, 1388-1389 (9th Cir. 1991); Jones v. Gomez, 66 F. 3d 199, 205 (9th Cir. 1995); Greyson v. Kellam, 937 F.3d 1409, 1412 (9th Cir. 1991)(bald assertions of ineffective assistance of counsel did not entitle petitioner to an evidentiary hearing); see also Hiivala v. Wood, 195 F.3d 1098, 1106 (9th Cir. 1999), *citing* Gray v. Netherland, 518 U.S. 152, 162-163 (1996)("general appeals to broad constitutional principles, such as due process, equal protection, and the right to a fair trial, are insufficient to establish exhaustion).

Moreover, the only conceivable basis for assertion of habeas jurisdiction for a life prisoner who has yet to be found suitable for parole is either a challenge to the denial of parole, which is not the case here, or a claim of lost credits. The credit issue has thoroughly been discussed supra. Even if, arguendo, the credits Petitioner earns as a life prisoner could have a discernable impact on the length of his sentence, which they do not, there is no federal liberty interest in an inmate's ability to earn <u>future</u> credits, as distinct from credits already earned. Sandin v. Conner, 315 U.S. 472, 115 S.Ct. 2293 (1995).

In Sandin, the U. S. Supreme Court found no liberty interest protecting against a thirty day assignment to segregated confinement because it did not "present a dramatic departure from the basic conditions of [the inmate's] sentence." Sandin, 515 U.S. at 485; see Cato v. Rushen, 824 F.2d 703, 705 (9th cir. 1987)(initial confinement in administrative segregation on the basis of little, even unsubstantiated information, does not create objectionable conditions.). Following Sandin, a number of Circuit Courts have held that there is no liberty interest, and therefore no due process protection, in the mere opportunity to earn good time credits. See Abed v. Armstrong, 209 F.3d 63, 66-67 (2d Cir. 2000)(although inmates have a liberty interest in good time credit they have already earned, no such interest has been recognized in the opportunity to earn good time credit where prison officials have discretion to determine whether an inmate or class of inmates is eligible to earn good time credit); Antonelli v. Sheahan, 81 F.3d 1422, 1431 (7th Cir. 1996)(convicted prisoner with no access to good time credit program because he was

incarcerated in county jail had no constitutional interest in the opportunity to earn good time credit); Luken v. Scott, 71 F.3d 192, 193 (5th Cir. 1995)(applying Sandin and holding that the loss of the opportunity to earn gain time is not constitutionally protected liberty interest).

Ultimately, Petitioner asks this Court to review whether Respondent correctly applied California law, California regulations, and CDCR's own policies to the gang validation process and his subsequent SHU confinement. In the absence of more specific allegations of violations of federal constitutional rights, this Court lacks habeas jurisdiction to consider such claims. See Lewis, 497 U.S. at 780 (federal habeas court must respect a state court's application of its own law and must not engage in *de novo* review); Clemons v. Mississippi, 494 U.S. 738, 739-40 (1990)(A federal court has no basis for disputing a state's interpretation of its own law.); Oxborrow, 877 F.2d at 1399 (federal court bound by state court ruling on state law).

D. Failure To Exhaust Claims.

A petitioner who is in state custody and wishes to collaterally challenge his conviction by a petition for writ of habeas corpus must exhaust state judicial remedies. 28 U.S.C. § 2254(b)(1). The exhaustion doctrine is based on comity to the state court and gives the state court the initial opportunity to correct the state's alleged constitutional deprivations. Coleman v. Thompson, 501 U.S. 722, 731 (1991); Rose v. Lundy, 455 U.S. 509, 518 (1982); Buffalo v. Sunn, 854 F.2d 1158, 1163 (9th Cir. 1988).

A petitioner can satisfy the exhaustion requirement by providing the highest state court with a full and fair opportunity to consider each claim before presenting it to the federal court. Duncan v. Henry, 513 U.S. 364, 365 (1995); Picard v. Connor, 404 U.S. 270, 276 (1971); Johnson v. Zenon, 88 F.3d 828, 829 (9th Cir. 1996). A federal court will find that the highest state court was given a full and fair opportunity to hear a claim if the petitioner has presented the highest state court with the claim's factual and legal basis. Duncan, 513 U.S. at 365 (legal basis); Kenney v. Tamayo-Reyes, 504 U.S. 1, 112 S.Ct. 1715, 1719 (1992) (factual basis).

Additionally, the petitioner must have specifically told the state court that he was raising a federal constitutional claim. Duncan, 513 U.S. at 365-66; Lyons v. Crawford, 232 F.3d 666, 669 (9th Cir. 2000), *amended*, 247 F.3d 904 (2001); Hiivala v. Wood, 195 F.3d 1098, 1106 (9th

15

Cir. 1999); Keating v. Hood, 133 F.3d 1240, 1241 (9th Cir. 1998). In Duncan, the United States Supreme Court reiterated the rule as follows:

> In Picard v. Connor, 404 U.S. 270, 275 . . . (1971), we said that exhaustion of state remedies requires that petitioners "fairly presen[t]" federal claims to the state courts in order to give the State the "opportunity to pass upon and correct alleged violations of the prisoners' federal rights" (some internal quotation marks omitted). If state courts are to be given the opportunity to correct alleged violations of prisoners' federal rights, they must surely be alerted to the fact that the prisoners are asserting claims under the United States Constitution. If a habeas petitioner wishes to claim that an evidentiary ruling at a state court trial denied him the due process of law guaranteed by the Fourteenth Amendment, he must say so, not only in federal court, but in state court.

Duncan, 513 U.S. at 365-366. Recently, the Ninth Circuit examined the rule further, stating:

> Our rule is that a state prisoner has not "fairly presented" (and thus exhausted) his federal claims in state court *unless he specifically indicated to that court that those claims were based on federal law*. See Shumway v. Payne, 223 F.3d 982, 987-88 (9th Cir. 2000). Since the Supreme Court's decision in Duncan, this court has held that the *petitioner must make the federal basis of the claim explicit either by citing federal law or the decisions of federal courts, even if the federal basis is "self-evident,"* Gatlin v. Madding, 189 F.3d 882, 889 (9th Cir. 1999) (citing Anderson v. Harless, 459 U.S. 4, 7 . . . (1982), or the underlying claim would be decided under state law on the same considerations that would control resolution of the claim on federal grounds. Hiivala v. Wood, 195 F3d 1098, 1106-07 (9th Cir. 1999); Johnson v. Zenon, 88 F.3d 828, 830-31 (9th Cir. 1996); . . . .
>
> In Johnson, we explained that the petitioner must alert the state court to the fact that the relevant claim is a federal one without regard to how similar the state and federal standards for reviewing the claim may be or how obvious the violation of federal law is.

Lyons v. Crawford, 232 F.3d 666, 668-669 (9th Cir. 2000) (italics added).

Respondent has attached to the motion to dismiss a copy of the state habeas petition filed by Petitioner in case no. S169112 in the California Supreme Court on December 16, 2008. (Doc. 11, Ex. 5). In that petition, Petitioner raises three claims: (1) Respondent failed to review his order of administrative segregation under the time limits set forth in Cal. Code Regs., tit. 15, § 3337; (2) Petitioner met his burden of proving that Respondent had failed to conduct the appropriate review of Petitioner's SHU placement in his first state habeas proceedings in the Kings County Superior Court; and (3) Respondent violated its own regulations by failing to use the proper prison "chronos" and by using improper ones. (Id.).

Even after careful review, it is no easy matter for the Court to determine which, if any, of Petitioner's claims are exhausted. Clearly, the claim in Ground Four of the instant petition, i.e., failure to provide a timely review of SHU confinement, was presented to the California Supreme

Court in Ground One of that state petition. However, in his state petition Petitioner cites only state regulations as a basis for his claim. (Doc. 11, Ex. 5). Fair presentation of a federal claim requires more than just the rote recitation of broad legal principles like "due process." Accordingly, Petitioner failed to "fairly present" this claim to the California Supreme Court as a violation of his federal constitutional rights. See Gray v. Netherland, 518 U.S. 152, 162-163, 116 S.Ct. 2074 (1996)(Fair presentation of a federal claim requires more than just the rote recitation of broad legal principles like "due process." ); Casey v. Moore, 386 F.3d 896, 913 (9th Cir. 2004)(references to "constitutional error" and deprivation of a fair trial," bolstered only by state law cases, was insufficient to fairly present federal constitutional issues).

As to Grounds One and Two in the instant petition, i.e., the claims that Respondent used improper evidence and violated the Castillo agreement in so doing, were not exhausted either because Petitioner failed to present those facts to the California Supreme Court. Nowhere in Petitioner's state petition does he refer to these six items of evidence as being a grounds for challenging his gang validation. Nor does Petitioner inform the state supreme court of his argument that Respondent has violated a prior settlement agreement providing that such evidence should not be used. Moreover, even assuming he had done so, Petitioner has failed to present such factual allegations in the form of a legal theory involving a violation of a federal constitutional right. As mentioned previously, simply alleging a violation of "due process" or asserting a "liberty interest" falls far short of the requirement that Petitioner "fairly present" the claim to the California Supreme Court as a violation of a federally protected right.

Finally, the Court cannot readily discern which claim in the state petition would correspond to the remaining ground in the instant petition, i.e., Ground Three. However, by process of elimination, it would appear to be Ground Three in the state petition. That conjecture is modestly confirmed by the fact that several of Petitioner's citations to California Regulations in Ground Three of the state petition find their corresponding citations in Ground Three of the instant petition. However, again, Petitioner is expressly relying on state laws and regulations, not on substantive violations of federal constitutional rights. Although Petitioner offers up the Fourteenth Amendment as a basis for his claim in the state petition, he provides the California

Supreme Court with no legal theory on which to connect the violations of state regulations that are alleged with the claim that such violations run counter to the safeguards of the Fourteenth Amendment. As such, Ground Three in the state petition failed to properly apprise the state high court that Petitioner was presenting a federal constitutional claim. See Martens v. Shannon, 836 F.2d 715, 717 (1st Cir. 1988)("[T]he exhaustion doctrine requires a habeas applicant to do more than scatter some makeshift needles in the haystack of the state court record. The ground for relief upon must be presented face-up and squarely; the federal question must be plainly defined. Oblique references which hint that a theory may be lurking in the woodwork will not turn the trick."); United States v. Dunkel, 927 F.2d 955, 956 (7th Cir. 1991)("Judges are not like pigs hunting for truffles buried in briefs.").

Based on the foregoing, the Court concludes that none of the claims in the instant petition were exhausted in state court by being fairly presented as federal constitutional claims. Because Petitioner has not presented his claims for federal relief to the California Supreme Court, the Court must dismiss the petition. See Calderon v. United States Dist. Court, 107 F.3d 756, 760 (9th Cir. 1997) (en banc); Greenawalt v. Stewart, 105 F.3d 1268, 1273 (9th Cir. 1997). The Court cannot consider a petition that is entirely unexhausted. Rose, 455 U.S. at 521-22; Calderon, 107 F.3d at 760.

Accordingly, the Court will grant Respondent's motion and will dismiss the petition for lack of habeas jurisdiction, failure to state a federal claim, and failure to exhaust state remedies. Moreover, a certificate of appealability is not required because Petitioner is challenging an administrative decision regarding the execution of his sentence. See White v. Lambert, 370 F.3d 1002, 1010 (9th Cir. 2004).

**ORDER**

Accordingly, the Court HEREBY ORDERS:

1. Respondent's motion to dismiss (Doc. 11), is GRANTED;
2. The petition for writ of habeas corpus (Doc. 1), is DISMISSED because the petition does not allege grounds that would entitle Petitioner to habeas corpus relief [and for lack of exhaustion];

3. Petitioner's motion to supplement his opposition to the motion to dismiss (Doc. 15), is GRANTED;

4. The Clerk of Court is DIRECTED to enter judgment and close the file.

5. A certificate of appealability is not required.

IT IS SO ORDERED.

Dated: **February 25, 2010**  **/s/ Jennifer L. Thurston**
UNITED STATES MAGISTRATE JUDGE